**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **DAVID J. POTTER, II, ET UX** | § | |
| **Plaintiff s** | § | |
| | § | |
| **V.** | §**CIVIL ACTION NO. 5:23-cv-_____** | |
| | § | |
| **CRESTBROOK INSURANCE** | § | **JURY DEMANDED** |
| **COMPANY** | § | |
| **Defendant** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**I. PARTIES**

1.      Plaintiffs, David J. Potter II and wife, Aria Potter, are individuals, residents of

Texarkana, Bowie County, Texas, residing at #2 Forest Brook, Drive, Texarkana,

Texas 75503.

2.      The Defendant, Crestbrook  Insurance Company is a foreign insurance

company with its Principal Home Office located a state other than Texas.    The

Defendant is doing business in the State of Texas, as well as other states in the United

States, and did business in this case by underwriting the issuance of Certificate Of

Insurance Policy Number HO00054188 to the Plaintiffs as the insured party.  The

Defendant through counsel has agreed to recognize the service upon the agent for

service for Nationwide Insurance Company, and will answer this Amended Complaint

within 21 days of receipt of a filed copy to this First Amended Complaint.

## II.  FEDERAL JURISDICTION

3.      This court  has original jurisdiction because the amount in controversy in this

action exceeds the sum of $75,000, exclusive of interests and costs, and the dispute

is between a citizen of the State of Texas and a Foreign Corporation doing business

in the State of Texas. 28 U.S.C. § 1332.

4.      Venue is proper in this court because the Plaintiffs are residents and citizens

within the Eastern District of Texas and are the named insureds under a casualty

insurance  policy issued to the policy owners of the insured property which sustained

damage located at #2 Forest Brook, Texarkana, Texas 75503.

## III.  JURY DEMAND

5.      Plaintiffs hereby gives notice of her demand for a jury trial.

## IV. BACKGROUND STATEMENT OF RELEVANT FACTS

6.      At all times relevant to this the Plaintiffs' cause of action, the Plaintiffs' were

named insureds under Crestbrook Insurance Company's Homeowner's policy # HO

000054188-08.  Notice of a claim was given to Defendant's agent who sold the policy

to Plaintiffs, namely, Youngblood Insurance.  The Claim number assigned to the

claim was #CLM-00136170.

7.      Plaintiff David J. Potter II noticed a loose tile in the bath/shower area of a

downstairs restroom.  Later, in preparation for the replacement of the tile, the Plaintiff removed the floor tile outside of the shower in front of the water closet. When the tile was removed, it was revealed for the first time that the wooden deck underneath the tile was rotten and deteriorated. (The house has a pier and beam floor and foundation.)  Subsequently it was then revealed that much of the bath floor was rotted and the rotting floor extended back under the shower enclosure.  No water had ever been evidenced in the floor from the top side.  Upon the discovery of the apparent leak from the shower enclosure, the downstairs shower (not the master bath shower) was placed off limits to the family and other showers in the house were then used.  During the increased use of those other bath facilities in the upstairs, as well as the master bath on the first floor, additional, unexplained "water marks" on the ceilings of the downstairs areas beneath the upstairs bathroom areas began to appear. In addition, the increased use of the master shower caused black mold to begin to show on the walls and ceiling of the downstairs master bath.

8.      The Plaintiff, David J. Potter II, concluded that the shower pans were failing and caused the damage through water leaks out of the shower pans, and into the floors beneath the showers. This was beginning to cause molds and water damage to various locations in the house.

9.      On or about the 20th day of July, 2023, the Plaintiff notified the defendant of

the damage claim as a result of the failure of the Shower Pans throughout the house. It was necessary to begin to repair at least one shower to permit the family to have a useable shower and to stop the damage being caused by the use of the other shower facilities in the house. Therefore, the entire shower in the downstairs restroom (non-master restroom) was removed including all rotted floor area (which necessitated the removal of the water-closet and the shower pan and shower wall tiles).

10.    The defendant gave notice of the desire by the claims manager to investigate the cause of the damage.  The first investigator hired by the Defendant was Herndon/McFarland Inc. Plumbing from Addison, Texas.  The report confirmed the cause determined by the Plaintiff, David J. Potter II, namely that the shower pans were leaking and that any and all other potential sources of water intrusion that would cause the rotted floors and other water damage to the house were ruled out. Specifically, the sanitary sewer, domestic water system, bath tub drain, and sanitary sewer were all ruled out and a possible explanation.

11.    Thereafter, apparently for the purpose of finding a reason to deny the claim, the Defendant sent additional experts to investigate and determine the cause of the damage.  On July 27, 2023, the Defendant gave notice by email to Plaintiff, David J. Potter II that the Defendant "would like to send an engineer to inspect your home to further investigate causation of the damage throughout.  Nederveld Engineering will

Page 4 of  14

be in contact with you in 1-2 days to setup an appointment.  I (Jennifer Cuevas) will

try my very best to be on site during the inspection (depending on date/time).  Please

leave home as is and do not do any demo."  On July 27, 2023, a request was made by

Defendant Nationwide for a forensic investigation as to the cause of the damage to

Plaintiff's home. Omid Khandel, PhD, an engineer with Nederveld, Inc. and/or

Wesley A. Gerbick, a licensed Professional Engineer, and a Forensic Engineer,

visited the site and rendered their report on September 7, 2023..  The report fully

supported the conclusion of the Plaintiff. The engineers concluded, and rendered the

following Opinion:

> Based on our investigation, we have the following opinions:
>
> 1) The reported and observed bio-organic growth and/or water intrusion on the bathroom 1, half bathroom, first-floor hallway around the light fixture, and the wall above the stairs (i.e., location1, 3, 4, and 5, respectively) is due to the reported leaks in the upper-level shower pans in bathroom 2 and 3 (i.e., location 6 and 7,  respectively). We observed no evidence of water intrusion from the roof and elevations of the building, and the location of bio-organic growth corresponds to the location of the upper-level shower pans with reported water loss in the plumbing test report issued by Herndon/McFarland, Inc., on July 25, 2023.
>
> 2) The cracked tiles in the master bathroom (location 2) are due to an ongoing moisture intrusion below the shower enclosure. The ongoing moisture intrusion below the shower pan resulted in movement between underlaying materials due to elevated moisture levels between the materials, which eventually displayed as cracking in the tiles. The observed bio-organic growth is also likely due to the same phenomenon. However, due to the presence of water heaters and air-conditioning unit and their drain lines above the master bathroom and

evidence of prior repair at the intersection of the master bedroom roof and the side wall, we cannot rule out their potential contribution to the water intrusion through the ceiling of the master bathroom.

3) The bio-organic growth on the pocket door in the bathroom 3 (location 7) is due to elevated humidity due to a recent increase in the frequency of using the shower. According to Mr. Potter, they increased using the shower in this bathroom following the water intrusion and bio-organic growth in the to lower-level bathrooms and observed an increase in the bio-organic growth and swelling of the pocket door following thereafter. Additionally, we observed no evidence of water intrusion in the attic space above this location, nor did we observe evidence of water intrusion or bio-organic growth in the adjacent walls and ceilings in bathroom 3 (i.e., location 7). No stains or other evidence of a point source of water were observed on the door.

4) Regarding the timeline of the observed bio-organic growth, as noted in the discussion section above, bio-organic growth on a directly wetted surface can appear within one week or less while on a non-directly wetted surface, caused only by humidity, can take 60 to 90 days before it becomes visible. Accordingly, we are not able to pinpoint an exact date regarding the occurrence of bio-organic growth. Reference #: CLM-00136170

12.     The Plaintiff, David J. Potter II requested a copy of all reports and also requested a "Proof  of  Loss" which had not been provided by the Defendant, although a plaintiff's claim had been acknowledged by the Defendant's claims department.

13.     On September 11, 2023, the Defendant's claims Adjuster sent an email to Plaintiff and others stating "We are in receipt of the engineer report and are reviewing it.  We have to discuss thoroughly with mgmt. Before making a coverage decision.

I will follow up with you and our insured (cc'd on this email) once that review is complete.

14.    On September 14, 2023, Defendant's claims adjuster, Jennifer Cuevas, sent an email to Plaintiff stating: "Engineer report is attached per your request.  We have a meeting scheduled for tomorrow to discuss our coverage position.  I will follow up with you next week on the outcome."

15.    On or about September 22, 2023, the Defendant denied coverage on the basis that the claim was presented more than 2 weeks from the date of damage to the Plaintiffs' home.

## CAUSE OF ACTION #1: BREACH OF CONTRACT

16.    The Plaintiffs adopts and restates all allegations set forth in Paragraphs 6-15 above.

17.    The Defendant has breached the Homeowner's insurance contract by failing to timely accept the responsibility to pay insurance benefits required to be paid under the terms of the contract for the reasonable costs of repair of the water damage caused by the failed shower pans. By reason of the breach of contract, Plaintiffs is entitled to a judgment against the Defendant for all reasonable costs of repairs which at this time is not fully determined, but will exceed the minimum jurisdictional limits of this court and is in excess of $75,000.00.

## CAUSE OF ACTION COUNT #2: VIOLATION OF
## THE TEXAS INSURANCE CODE

18.     The Texas Insurance Code, Title Five (Protection of Consumer Interests),

Subtitle C. (Deceptive, Unfair, and Prohibited Practices), Chapter 542 (Processing

and Settlement of Claims), Sub-chapter B (Prompt Payment of Claims) sets strict time

limits for processing a claim. Section 542.052 makes this law applicable to the

Defendant, and to this claim. Sec. 542.054 requires this sub-chapter to be "liberally

construed to promote the prompt payment of insurance claims."

19.     Section 542.055 (a) of Chapter 542 of the Texas Insurance Code requires that

"not later than the 15 day, after the date the insurer receives notice of a claim, the

insurer *shall*:

(1) acknowledge receipt of the claim; (this was done timely)

(2) commence any investigation of the claim; (this was done timely) and

(3) request from the claimant all items, statements, and forms that the insurer

reasonably believes, at that time, will be required from the claimant. (This would

include a "Proof of Loss" and was never done.)

(b) An insurer may make additional requests for information if during the

investigation of the claim the additional requests are necessary. (The Defendant

timely requested access by the Herndon/McFarland, Inc–Plumbing.  Thereafter, the

Defendant Unnecessarily, and unreasonably delayed in the processing of the claim by hiring a forensic engineering firm to do additional investigations, but which came to the same conclusion.  The Defendant instructed the Plaintiff to leave the home "as is and not to do any demo" work to repair the damage.

20.     Section 542.56 of Chapter 542 of the Texas Insurance Code ("Notice of Acceptance or Rejection of Claim") provides:

"(a) Except as provided in Subsection (b) or (d) [inapplicable here], an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss."

20.     The Defendant, therefore, violated the prompt payment act by failing to notify Plaintiffs of the Defendant's acceptance or rejection of the claim "not later than the 15 business day after the date the insurer received] all items, statements, and forms required by the insurer to secure a final proof

of loss."     Plaintiff contends that the Defendant had all information that was reasonably necessary to determine the cause of damage when it receive the investigative report from it experts who investigated the cause of damage, namely, the Herndon/McFarland Inc. report dated July 25, 2023.  Further delays in accepting the claim were unreasonable and unfair to the insured/Plaintiffs.

21.     Section 542.056 (d) provides: If the insurer is unable to accept or reject the

claim within the period specified by Subsection (a) [15 days from receipt of requested

documentation], the insurer, within that 15 day period shall notify the claimant of the

reasons that the insurer needs additional time. The Insurer shall accept or reject the

claim not later than the 45 day after the date the insurer notifies a claimant under this

section.  Defendant is in violation of this section.

22.     The Defendant did not notify the Plaintiffs that it needed additional time for

investigation, and did not accepted or deny the claim within the statutorily required

time. More specifically, the Defendant did not accept or reject the claim within 45

days after the date the insurer "notifies the claimant under this section" [under

Section 542.056].

23.     Defendant has violated the Insurance Prompt Payment provisions in Section

542, Subchapter B at every point in this claim process.  The  request for a redundant

causation or forensic report was made beyond the period permitted by Section

542.055 and 542.056 of Subchapter B, Prompt Payment of Claims Act, of the Texas

Insurance Code,

24.     Section 542.058 (Delay in Payment of Claim) provides that delays in payment

of claims beyond the period specified, ("in no event for more than 60 days"), requires

the Insurer to pay damages and other items as provided in Section 542.060 of the

Texas Insurance Code.  The Plaintiffs have been delayed in making the repairs to

their home and delayed the use and benefit of their showers facilities since June, 2023

until the claim was rejected on or about September 22, 2023.

25.     Section 542.060 provides for sanctions and remedies for violation of the

Prompt Payment Act, to wit: "(a) If an insurer that is liable for a claim under an

insurance policy is not in compliance with this sub-chapter, the insurer is liable to

pay, in addition to the claim, interest on the amount of the claim at the rate of 18 %

a year as damages, together with reasonable attorney's fees."

**CAUSE OF ACTION #3: VIOLATION OF THE**
**TEXAS DECEPTIVE PRACTICES CONSUMER PROTECTION ACT**

26.     Section 17.50 of the Texas Business and Commerce Code, Chapter 17 (Relief

for Consumers) ("TDPA") provides a cause of action for any act or practice in

violation of Chapter 541 of the Texas Insurance Code, and also provides in

subsection (b) that a consumer who prevails may, if the conduct of the defendant was

knowingly committed, recover "not more than 3 times the economic damages, which

in this case is 3 times the amount of the claim, plus prejudgment interest at 18% per

annum; and if the conduct was committed intentionally, the consumer may recover

damages for mental anguish, as found by the trier of fact, and the trier of fact may

award not more than 3 times the amount of damages for mental anguish and economic

damages.

27.     The Defendant has knowingly and intentionally committed the violations of

law governing the processing and payment of the claims on the casualty insurance

policy made the subject of this suit.

28.     Texas Business and Commerce Code, Chapter 17, Sub-chapter E, Section

17.43 (Cumulative Remedies) provides that "The provisions of this sub-chapter are

not exclusive. The remedies provided in this sub-chapter are in addition to any other

procedures or remedies provided for in any other law.

29.     Plaintiffs has knowingly and intentionally violated the Texas DTPA for which

Plaintiffs claims mental anguish in an amount of at least $100,000.00.

### CLAIM FOR ATTORNEY FEES FOR BREACH OF CONTRACT, VIOLATION OF THE TEXAS PROMPT PAYMENT ACT OF THE INSURANCE CODE AND THE TEXAS DTPA

30.     Plaintiffs has been required to hire the  undersigned attorney to bring suit in

this court.  Upon recovery of judgment in this court, the Plaintiffs is entitled to an

award of reasonable attorney fees under each stated cause of action, any one of which

would require the award of attorney fees, namely Breach of Contract, Violation of the

Prompt Payment Act of the Insurance Code and Violation of the Texas DTPA.

Therefore, Plaintiffs prays for an award of reasonable attorney fees and costs of this

proceeding.

**Wherefore, premises considered,** Plaintiffs prays for judgment against the Defendant for the reasonable cost of repair for damage caused by water intrusion as a result of failed shower pans and consequential damages arising therefrom, and for loss of use since the date of the claim plus a reasonable period of time to accept the claim (45 days), plus a period of time for repairs; for said damages to be trebled under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), and for reasonable and necessary attorney fees as may be shown by the evidence to be taxed as costs, for costs of court herein expended, for post judgment interest of 18% per annum as provided under the Texas Prompt Payment Act, and for all other just and proper relief, both at law and in equity, as Plaintiffs may show themselves to be entitled.

Respectfully Submitted,

_____
David J. Potter, Attorney at Law
Texas Bar No. 16175000
901 N. Stateline Ave.
Texarkana, Texas 75501-5268
Ph. 903-794-2283
Cell Phone: 903-277-0442
Email: dpotter@potter-law.com

/s/ Shorty Barrett

_____

Shorty Barrett
Texas Bar No. 24058754
6th and Hickory Streets
Texarkana, AR 71854

**ATTORNEYS  FOR PLAINTIFFS**