IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| DAVID J. POTTER, II, ET UX | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 5:23-cv-00098-RWS-JBB |
| | § | |
| CRESTBROOK INSURANCE | § | |
| COMPANY | § | |
| *Defendant.* | § | |

## DEFENDANT CRESTBROOK INSURANCE COMPANY'S ORIGINAL ANSWER AND DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Crestbrook Insurance Company ("Crestbrook" or "Defendant"), files this Original Answer and Defenses to Plaintiffs David J. Potter, II, ET UX's ("Plaintiffs") First Amended Complaint, and would respectfully show as follows:

## I.    DEFENDANT CRESTBROOK INSURANCE COMPANY'S ORIGINAL ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Crestbrook makes the following admissions and denials to Plaintiffs' claims as authorized by Federal Rule of Civil Procedure 8(b):

### I. PARTIES

1.      Upon information and belief, Crestbrook admits that Plaintiffs are individuals residing and domiciled in Bowie County, Texas.

2.      Crestbrook admits that it is an Ohio corporation with its principal place of business in Ohio, and that it is lawfully engaged in the business of insurance in Texas. Crestbrook further admits that its counsel agreed to accept service of this lawsuit on behalf of Crestbrook and agreed to answer Plaintiffs' First Amended Complaint within 21 days of its filing. Crestbrook admits that it issued an insurance policy bearing policy number HO00054188-08 to Plaintiffs for the policy

period of February 3, 2023, to February 3, 2024 (the "Policy"). Crestbrook admits that Plaintiffs are both named insureds under the Policy.

## II. FEDERAL JURISDICTION

3.      Crestbrook admits that the United States District Court for the Eastern District of Texas, Texarkana Division, has jurisdiction over this case. Crestbrook denies that Plaintiffs are entitled to the relief identified in Paragraph 3 of Plaintiffs' First Amended Complaint.

4.      Crestbrook admits that venue is proper in the United States District Court for the Eastern District of Texas, Texarkana Division. Upon information and belief, Crestbrook admits that Plaintiffs reside Bowie County, Texas. Crestbrook admits that Plaintiffs are named insureds under the Policy, and that the Policy provides insurance coverage for the real property located at 2 Forrest Brook Ln, Texarkana, TX 75503 (the "Property"), subject to the Policy's conditions, limitations, and exclusions. Crestbrook otherwise denies the allegations set forth in Paragraph 4 of Plaintiffs' First Amended Complaint.

## III. JURY DEMAND

5.   Paragraph 5 of Plaintiffs' First Amended Complaint is Plaintiffs' jury demand and does not require a response from Crestbrook.

## IV. BACKGROUND STATEMENT OF RELEVANT FACTS

6.      Crestbrook admits that it issued an insurance policy bearing policy number HO00054188-08 to Plaintiffs for the policy period of February 3, 2023, to February 3, 2024. Crestbrook admits that Plaintiffs are both named insureds under the Policy. Crestbrook further admits that Plaintiffs submitted a claim for alleged water damage to the Property. Crestbrook admits that it assigned number CLM-00136170 to Plaintiffs' claim for alleged water damage to the Property (the "Claim").

7.     Crestbrook lacks sufficient information to admit or deny the sequence of events alleged in Paragraph 7 of Plaintiff's First Amended Complaint. Crestbrook otherwise denies the allegations set forth in Paragraph 7 of Plaintiffs' First Amended Complaint.

8.     Crestbrook lacks sufficient knowledge to admit or deny the allegations in Paragraph 8 of Plaintiffs' First Amended Complaint concerning David J. Potter II's conclusions. Crestbrook admits that leaks in shower pans at the Property likely contributed to mold growth and other water damage.

9.     Crestbrook admits that Plaintiffs submitted the Claim for alleged water damage to the Property on or about July 20, 2023. Crestbrook denies the remaining allegations set forth in Paragraph 9 of Plaintiffs' First Amended Complaint.

10.     Crestbrook admits that Field Claims Specialist III Jennifer Cuevas ("Cuevas") coordinated with Plaintiffs to schedule an inspection of the Property to investigate the Claim. Crestbrook further admits that it engaged Herndon/McFarland Inc., based in Addison, Texas, and ServiceMaster, based in Nash, Texas, to conduct an inspection of the Property. Crestbrook denies the remaining allegations set forth in Paragraph 10 of Plaintiffs' First Amended Complaint.

11.     Crestbrook admits that Cuevas sent Plaintiff David J. Potter II the July 27, 2023, email referenced in Paragraph 11 of Plaintiffs' First Amended Complaint. Crestbrook admits that professional engineer Omid Khandel, PhD, of Nederveld, Inc. ("Nederveld") inspected the Property with Cuevas on July 27, 2023. Crestbrook admits the resulting report Nederveld report is dated September 7, 2023 (the "Nederveld Report"). Crestbrook admits the Nederveld Report speaks for itself. Crestbrook denies the remaining allegations set forth in Paragraph 13 of Plaintiffs' First Amended Complaint.

12. Crestbrook admits Plaintiff David J. Potter II requested a copy of the Nederveld Report via email on September 11, 2023. Crestbrook denies the remaining allegations set forth in Paragraph 12 of Plaintiffs' First Amended Complaint.

13. Crestbrook admits the allegations set forth in Paragraph 13 Plaintiffs' First Amended Complaint.

14. Crestbrook admits the allegations set forth in Paragraph 14 Plaintiffs' First Amended Complaint.

15. Crestbrook admits that it denied coverage for Plaintiffs' Claim because Plaintiffs' claimed damages were not covered under the Policy. Crestbrook admits it issued Plaintiffs correspondence dated September 25, 2023, in which Crestbrook thoroughly explained the basis of its coverage denial. Crestbrook denies the remaining allegations set forth in Paragraph 15 of Plaintiffs' First Amended Complaint.

## CAUSES OF ACTION #1 BREACH OF CONTRACT

16. Paragraph 16 of Plaintiffs' First Amended Complaint contains a reference to the foregoing paragraphs for incorporation by reference and does not require a response by Crestbrook. To the extent that a response is required, Crestbrook reasserts its admissions and denials set forth in the foregoing paragraphs of this Original Answer.

17. Paragraph 17 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 17 of Plaintiffs' First Amended Complaint. Crestbrook further denies that Plaintiffs are entitled to the relief sought in Paragraph 17 of Plaintiffs' First Amended Complaint.

## CAUSE OF ACTION COUNTY #2: VIOLATION OF
## THE TEXAS INSURANCE CODE

18.     Paragraph 18 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 18 of Plaintiffs' First Amended Complaint.

19.     Paragraph 19 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 19 of Plaintiffs' First Amended Complaint.

20.     Paragraph 20 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 20 of Plaintiffs' First Amended Complaint.

20.     The second Paragraph 20 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in the second Paragraph 20 of Plaintiffs' First Amended Complaint.

21.     Paragraph 21 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 21 of Plaintiffs' First Amended Complaint.

22.     Paragraph 22 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 22 of Plaintiffs' First Amended Complaint.

23.     Paragraph 23 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 23 of Plaintiffs' First Amended Complaint.

24.     Paragraph 24 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 24 of Plaintiffs' First Amended Complaint.

25.     Paragraph 25 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. To the extent Plaintiffs assert or suggest that the legal theories stated in Paragraph 25 of Plaintiffs' First Amended Complaint apply to Crestbrook, Crestbrook denies the allegations set forth in Paragraph 25 of Plaintiffs' First Amended Complaint.

**CAUSE OF ACTION #3: VIOLATION OF THE**
**TEXAS DECEPTIVE PRACTICES CONSUMER PROTECTION ACT**

26.     Paragraph 26 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 26 of Plaintiffs' First Amended Complaint. Crestbrook further denies that Plaintiffs are entitled to the damages and relief sought in Paragraph 26 of Plaintiffs' First Amended Complaint.

27.     Crestbrook denies the allegations set forth in Paragraph 27 of Plaintiffs' First Amended Complaint.

28.     Paragraph 28 of Plaintiffs' First Amended Complaint states legal conclusions that do not require a response from Crestbrook. Crestbrook otherwise denies the allegations set forth in Paragraph 28 of Plaintiffs' First Amended Complaint.

29.     Crestbrook denies the allegations set forth in Paragraph 29 of Plaintiffs' First Amended Complaint. Crestbrook further denies that Plaintiffs are entitled to the damages and relief sought in Paragraph 29 of Plaintiffs' First Amended Complaint.

**CLAIM FOR ATTORNEY FEES FOR BREACH OF CONTRACT,**
**VIOLATION OF THE TEXAS PROMPT PAYMENT ACT OF THE**

**INSURANCE CODE AND THE TEXAS DTPA**

30.     Crestbrook admits Plaintiffs are represented by Plaintiff David J. Potter, II in this lawsuit. Crestbook denies the remaining allegations set forth in Paragraph 30 of Plaintiffs' First Amended Complaint. Crestbook further denies that Plaintiffs are entitled to the relief sought in Paragraph 30 of Plaintiffs' First Amended Complaint.

31.     Crestbrook denies the allegations set forth in the Prayer section of Plaintiffs' First Amended Complaint. Crestbrook further denies that Plaintiffs are entitled to any of the damages or relief sought in the Prayer section of Plaintiffs' First Amended Complaint.

II.     **DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S DEFENSES**

**First Defense**
**Policy Provisions**

32.     Plaintiffs cannot recover, in whole or in part, on their breach of contract claim, and consequently on any of the other causes of action alleged in their First Amended Complaint, because the Policy contains conditions, limitations, and exclusions negating coverage, in whole or in part, for the damages alleged by Plaintiffs. Nationwide's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy. Nationwide relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially applicable policy provisions include, but are not limited to:

**Your Amended Policy Declaration**
**Personal Home Policy**
Policy Number: HO00054188-08
Policy Period: 02/03/2023 to 02/03/2024
Amendment Effective: 05/11/2023
**Date Prepared: 05/11/2023**

**Policyholder (Named Insured)**
**David Potter and Aria Potter**
**2 Forrest Brook Ln**
**Texarkana, TX 75503-1134**          ***

**Mortgagee**
**PNC Bank, National Association ISAOA/ATIMA**
**PO BOX 7433**
**Springfield, OH 45501-7433**
**Number: 1001004129**

**General Policy Information**
**Issued: 05/11/2023**
These Declarations are part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding other coverages and additional coverage options.

**Policy Period From 02/03/2023 To 02/03/2024** but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required.

**Residence Premises:**
**2 Forrest Brook Ln**
**Texarkana, TX 75503-1134**

******* **Important Information** *******

If you have not provided us with advance notice of removal of personal property necessary to sustain normal living prior to a loss covered by this policy, a special Vacancy Deductible may apply. This Vacancy Deductible, as described in your Personal Home policy, is $93,852 (5% of your Coverage A – Dwelling limit of liability), or the increased Coverage A limit if an extended replacement cost loss settlement applies at the time of a covered loss. In the event of a loss, the greater of this percentage Vacancy Deductible, the Section I Policy Deductible or any Deductible applicable to the cause of loss will apply.

If you have not provided us with notice of construction or renovation of your Residence Premises for which we have provided written approval prior to a loss covered by this Personal Home policy, a special Construction Deductible may apply. This Construction Deductible, as described in your Personal Home policy, is $93,852 (5% of your Coverage A – Dwelling limit of liability), or the increased Coverage A limit if an extended replacement cost loss settlement applies at the time of a covered loss. In the event of a loss, the greater of this percentage Construction Deductible, Section I Policy Deductible or any Deductible applicable to the cause of loss will apply.

***

| Section I | Deductible: $5,000 | All Peril |
|---|---|---|
| | $18,770 (1%) | Wind/Hail |

| Property Coverages | Limits Of Liability |
|---|---|

| | |
|---|---|
| Coverage A - Dwelling | $413,112 |
| Coverage B – Other Structures | $41,311 |
| Coverage C - Personal Property | $309,834 |
| Coverage D – Loss of Use | Actual Loss Sustained |

\*\*\*

**Exclusions**

Texas Asbestos, Silica, Lead and Total Pollution Exclusion

**Other Coverages / Options / Endorsements Applicable**

| | **Coverage Limits** |
|---|---|
| | \*\*\* |
| Biological Deterioration Clean Up | $10,000 |
| Back Up or Overflow of Sewers or Drains | $5,000 Deductible |
| Extended Dwelling Replacement Cost | Included |
| \*\*\* | |
| Ordinance of Law | 100% of Coverage A |
| \*\*\* | |

*"Deductible amounts subject to change due to Inflation – See Inflation Protection Coverage Page 9, Number 8 in your Personal Homeowner Policy"*

\*\*\*

### PERSONAL HOME POLICY

***Insuring Agreement***

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all applicable provisions of this policy.

\*\*\*

***Definitions***

Certain words and phrases used in this policy are defined as follows:

1. **"We", "us"** and **"our"** refer to the company shown on the Declarations as the issuing company.
2. **"You"** and **"Your"** (modified by endorsement)

\*\*\*

4. **"Insured"** (modified by endorsement)

\*\*\*

5. **"Insured Location"** means:

a. the Residence Premises.

\*\*\*

11. **"Actual Cash Value"** means:

a. In the case of a total loss to buildings covered under Coverage A. or B., the policy limit or fair market value of the building, whichever is less; or

b. In the case of a partial loss to buildings covered under Coverage A. or B., or loss to other covered property, the amount it would cost to repair or replace covered property with material of like kind and quality, whichever is less, minus a reasonable deduction for physical deterioration and depreciation, including obsolescence based upon its condition at the time of loss or the policy limit, whichever is less.

In the case of a partial loss to buildings under Coverage A. or B., the deduction for physical deterioration shall apply only to components of the building that are normally subject to repair and replacement during the useful life of that building.

12. **"Foundation"** means a building's substructure including substructural walls, including but not limited to basement walls and crawl space walls.

13. **"Biological Deterioration or Damage"** means damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

\*\*\*

*Section I – Property Coverages*
*Coverage Agreements*
We cover all risk of accidental direct physical loss to property described in Coverages A., B. and C. below except for losses excluded under Section I – Property Exclusions.

**COVERAGE A—DWELLING**

    **We** cover:

1. the dwelling on the **Residence Premises** used mainly as **your** private residence including attached structures.
2. materials or supplies on or adjacent to the **Residence Premises** for use in construction, alteration or repair of:
   a. the dwelling; or
   b. Coverage B—Other Structures.

    **We** do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land, except to the extent provided in Section I—Additional Property Coverages, Land.

\*\*\*

**COVERAGE C—PERSONAL PROPERTY**

    **We** cover personal property owned or used by an **Insured** while it is anywhere in the world. At **your** request, **we** will cover personal property owned by others. It must be on the part

of the **Residence Premises** occupied by an **Insured.** This extension of coverage does not increase the limit of liability.

**Our** limit of liability for personal property normally located at an **Insured's** residence other than the **Residence Premises** is ten percent (10%) of the highest limit of liability for Coverage C applicable under this or any other policy issued by **us** or an affiliate company which provides coverage for **your** personal property. No coverage under this provision is afforded to the perils of Wind or Earthquake. This ten percent (10%) limitation does not apply to personal property:

     1.  removed from the **Residence Premises** because:
        a.  of a covered loss; or
        b.  the **Residence Premises** is being repaired, renovated or rebuilt and it cannot be lived in or the property cannot be stored in it; or
     2.  in transit to and from, or while in a newly acquired principal residence for sixty (60) days. The sixty (60) days start right after **you** begin to move the property.

***

**COVERAGE D – LOSS OF USE (modified by endorsement)**

***

*Additional Property Coverages*

    1. **Debris Removal.**
    a.      **We** will pay reasonable expense **you** incur removing debris of:
    (1)     covered property, if the peril causing the loss is covered; or

***

This coverage is additional insurance.

2. **Reasonable Repairs. We** will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. Actions taken to repair other damaged property will be covered only if the other property is also covered under the policy and that other property was damaged by a covered cause of loss. These expenses are included in the limit of liability applying to the damaged property.

***

10. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **Biological Deterioration or Damage** to property covered under Coverages A., B., and C., **we** will pay, up to the amount shown on the Declarations, for:

    a.     the cost to clean up, remove and dispose of the **Biological Deterioration or Damage** to covered property;
    b.     the cost to tear out and replace any part of the building or other covered property needed to gain access to the **Biological Deterioration or Damage**;
    c.     the cost of testing which is performed in the course of clean up and removal of the **Biological Deterioration or Damage** from the **Residence Premises**; and
    d     additional living expenses **you** may incur, as outlined under Coverage D., that results from items a., b. or c. above.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will pay for all loss or costs payable under this Additional Coverage. Such

11

costs are payable only if **you** report the **Biological Deterioration or Damage** to **us** within one hundred eighty (180) days of having first discovered the **Biological Deterioration or Damage**.

The covered cause of loss that causes or results in **Biological Deterioration or Damage** to covered property must have occurred during the policy period.

This is an additional amount of coverage.

\*\*\*

14. **Ordinance or Law.** If a covered peril causes a loss to property covered under Coverage A – Dwelling and Coverage B – Other Structures, settlement will be based on enforcement of any ordinance or law regulating the:

a.      Construction;

b.      Repair;

c.      Renovation;

d.      Remodeling; or

e.      Demolition of the damaged building or other structure.

The damaged or destroyed building structure must be repaired or replaced at the Residence Premises. (modified by endorsement)

**Special Exclusions**

**We** will not pay costs:

a. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

\*\*\*

c. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

However, exclusion c. does not apply:

> (1) when it is necessary to remodel, remove or replace a portion of the undamaged building structure in order to complete repairs, replacement or remodeling of the damaged portion of the covered building structure; or
>
> (2) if the total damage to the covered building structure is more than fifty percent (50%) of the building's **Replacement Cost**, less any ordinance or law expenses, at the time of the loss.

d. resulting in diminution in value of **Residence Premises.**

\*\*\*

*Property Exclusions*

**(Section I)**

1.   (modified by endorsement)

> \*\*\*
>
> > b.   Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered. Water and water-borne material damage means-
> >
> > > (1) Flood, surface water, waves, tidal water, overflow of water from a body of water or water borne material from any of these;

    (2) run off of water or water-borne material from a paved surface, driveway, walkway, patio, or other similar surface; or spray from any of these, even if driven by wind.

    (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **Foundation**, swimming pool or other structure.

\*\*\*

c.  Neglect, meaning neglect of the **Insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

\*\*\*

f.  Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **Insured.**

    \*\*\*

k**. Biological Deterioration or Damage**, except as provided by **Section I—Additional Property Coverages—Bio logical Deterioration or Damage** Clean Up and Removal.

    \*\*\*

m.  Diminution in value or depreciation.

    \*\*\*

p.  A fault, weakness, defect or inadequacy in the:

    (1) specifications, planning, zoning;

    (2) design, workmanship, construction, materials;

    (3) surveying, grading, backfilling;

    (4) development or maintenance;

of any property on or off the **Residence Premises**, whether intended or not.

However, any resulting loss is covered unless another exclusion applies.

    \*\*\*

r.   Weather, Temperature or Dampness. (modified by endorsement)

    \*\*\*

u. continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from a:

    (1) heating, air conditioning or automatic protective sprinkler system;

    (2) household appliance;

    (3) plumbing system; or

    (4) water, steam or sewer pipes, or storm drains located off the **Residence Premises.**

A plumbing system or household appliance does not include a sump pump, sump pump well or other system designed to remove subsurface water drained form the **Foundation** area.

However, any resulting loss is covered unless another exclusion applies. If loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

\*\*\*

    z.  Gradual or Sudden Loss due to:

       (1) wear and tear, marring, deterioration;

       (2) inherent vice, latent defect, mechanical breakdown;

       (3) smog, rust;

       (4) smoke from agricultural smudging or industrial operations;

       (5) settling, cracking, shrinking, bulging or expansion or pavements, patios, **Foundations,** walls, floors, roofs or ceilings;

       (6) root growth, movement or action;

       If any of items 1.z.(1) through (6) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, **we** cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped.

    aa.  Ordinance Or Law

       Ordinance Or Law means any ordinance or law:

       (1) Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion does not apply to the coverage that may be provided for in Ordinance Or Law under Section **I**—Additional Property Coverages;

       (2) The requirements of which result in a loss in value to property; or

       (3) Requiring any **Insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of contamination or pollution.

2.  **We** do not cover loss to property described in Coverage C. resulting directly from any of the following:

    a.  dampness or extremes of temperatures unless the direct cause of loss is rain, snow, sleet or hail.

\*\*\*

***Property Conditions***
***(Section I)***

**1.**  **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we will not be liable:

    a.  to the **Insured** for more than the **Insured's** interest.

    b.  For more than the limit of liability.

**2.**  **Deductible.** (modified by endorsement)

\*\*\*

**3.**  **Your Duties after Loss.** (modified by endorsement)

**4.**  **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

    a.  Under Coverage C – Personal Property, **Replacement Cost** of the full cost to repair, at the time of loss, without deduction for depreciation.

14

"**Replacement Cost**" means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When a new article is no longer available, **Replacement Cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

**Our** limit of liability for loss shall be the lesser of:
(**1**) **Replacement cost** at the time of loss;
(**2**) full cost of repair;
(**3**) any special limits of liability described in this policy or attached by endorsement; or
(**4**) **our** cost to repair or replace any pair of the damaged or stolen property with equivalent property.

\*\*\*

This coverage does not apply to:

\*\*\*

(3) Property not maintained in good or workable order.
(4) Property which is obsolete or useless to **you** at the time of loss.

b.   Covered losses to **your** property under **Coverage A – Dwelling** will be settled as follows:
**We** will pay the cost of repair or replacement, without deduction for depreciation and without regard to the limit of liability shown on the Declarations.

\*\*\*

**You** agree to:
(1) Insure **your** Dwelling to at least one hundred percent (100%) of its **Replacement Cost** as determined by **our Replacement Cost** estimation or an inspection performed by a recognized appraisal agency authorized by **us**;
; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less;
(2) Repair or replace the Dwelling with materials of like kind and quality on the **Residence Premises**; or, for no greater cost, buy or build a Dwelling at another location. If **you** choose not to repair or replace, **we** will only pay **you** the cost to repair or rebuild the damaged Dwelling at the same premises prior to the loss, or the applicable limits of insurance shown on the Declarations, whichever is less;

\*\*\*

c.   Under **Coverage B – Other Structures**, **we** will pay up to the applicable limit shown on the Declarations the cost to repair or replace without deduction for depreciation based on equivalent construction and use on the same premises even if **you** choose not to repair or replace.

\*\*\*

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:
    a.   In case of loss to a pair or set, **we** may elect to:

(1) repair or replace a part to restore the pair or set to its value before the loss;
(2) pay **our** cost to replace the set;
(3) pay the difference between market value of the property before and after the loss; or
(4) pay full **Replacement Cost** of the pair or set provided **you** give **us** the remaining parts.

\*\*\*

c.  (modified by endorsement)

\*\*\*

f.  (modified by endorsement)

\*\*\*

6.  **Appraisal. If you** and **we** fail to agree on the amount of loss, either can request that the amount be set by appraisal. If either makes a written request for appraisal, each will select a competent independent appraiser and notify the other of the appraiser's identity within twenty (20) days of receipt of the written request. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within fifteen (15) days, **you** or **we** can ask a judge or court of record in the state where the **Residence Premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve. This is not a provision providing for or requiring arbitration.

The appraisers and umpires are only authorized to determine the **Actual Cash Value**, **Replacement Cost**, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us**. The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding on **you** and **us**. This appraisal process and authority granted to appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us**.

7.  **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

a.  Other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

  b.  A service agreement, the insurance provided by this policy is excess over any such agreement.
      Service agreement means:
      (1) A service plan;
      (2) Property restoration plan
      (3) Home or appliance warranty; or
      (4) Other similar service warranty; even if it is described as insurance.

8.  **Suit Against Us.** (modified by endorsement)
\*\*\*
10. **Mortgage Clause.** (modified by endorsement)
\*\*\*
15. **Policy Period.** This policy applies only to loss which occurs during the policy period.
\*\*\*

## TEXAS AMENDATORY ENDORSEMENT

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.
\*\*\*

2. Paragraph 2. "**you**" and "**your**" under the Definitions section is replaced by the following:

2. "**You**" and "**your**" refer to the named **Insured** shown in this policy and **your** spouse who resides at the **Residence Premises.** If the spouse ceases to be a resident of the named **Insured's** household or household of the sole proprietor, majority shareholder or majority member, or general partner during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named **Insured.**

3.  Paragraph 4.a. of "**Insured**" under the Definitions section of form P1405 Personal Home policy is replaced by the following:
    a.  **You** and residents of **your** household who are:
        (1) **Your Relatives.**
        (2) Other persons under the age of twenty-six (26) and in the care of **you** or **your Relative**.
        (3) A civil partner by Civil Union or Registered Domestic Partnership filed and recognized by the state.
        (4) A **Domestic partner.**
\*\*\*

6.  The following definitions are added to the Definitions section of this policy:
\*\*\*
"**Relative**" means a person related to you by blood, marriage or adoption who is a resident of **your** household.
\*\*\*

9. For form P1405 Personal Home policy and for form P1406 Personal Condo policy, all paragraphs of **COVERAGE D – LOSS OF USE** of Section **I** – Property Coverages are replaced as follows:

1.   The limit of liability for this coverage is the total limit of liability for the coverages in a. Additional  Living Expense, b. Fair Rental Value, and c. Prohibited Use below:

a. **Additional Living Expense.** If a covered loss under Section I makes that part of **your Residence Premises** where **you** reside not fit to live in, **we** cover the reasonable increase in **your** normal living expenses that is necessary to maintain **your** household's usual standard of living, including kenneling domestic animals not primarily owned or kept for **Business** use. **We** cover this increase commencing with the date of loss and ending with the earliest of the following:

> (1) The reasonable amount of time required to restore **your Residence Premises** to a habitable condition
> (2) The shortest amount of time required to settle elsewhere if **you** decide to permanently locate;

\*\*\*

2. **You** must inform us of **your** decision regarding whether **you** intend to repair or replace the damage or permanently relocate within six (6) months from the date the loss is reported to us. Construction must begin within twelve (12) months from the date of loss. In order for a. Additional Living Expense and b. Fair Rental Value to apply, **you** must comply with these timelines unless a later date is agreed to **us** in writing.

14. The first paragraph in Exclusion 1. Under Section **I –** Property Exclusions is replaced by the following:

> 1. **We** will not pay for loss resulting directly or indirectly or which ensues from or is a result of any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\*\*\*

16. Exclusion 1.r. Weather, Temperature or Dampness under Section **I** – Property Exclusions is replaced by the following:

> r. Dampness, temperature or humidity. **We** do not cover any loss caused by dampness, change in or extremes of temperature, humidity or dryness of atmosphere, or water vapor. This exclusion does not apply to:
> (1) Direct loss by rain, sleet, now or hail; or
> (2) Coverage provided by 16. Refrigerated Property under Section I – Additional Property Coverages.

\*\*\*

19. Paragraph 2. **Deductible** under the Section **I** – Property Conditions is replaced by the following:

> 2. **Deductible**. Unless otherwise noted in this policy, the following deductible provisions apply. With respect to any one loss:
> a. Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations or contained within the policy provisions.
> b. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

    c. Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property.

\*\*\*

20. Paragraph 3. **Your Duties after Loss** under Section **I** – Property Conditions is replaced by the following:

    3.      **Your Duties After Loss.**

            In case of a loss to covered property **we** have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to **us.** These duties must be performed either by **you**, and **Insured** seeking coverage or a representative of either:

    a.  Give prompt notice to **us** or **our** agent. . . .

    \*\*\*

    d.  Protect the property from further damage. If repairs to the property are required, **you** must:

        (1) Make reasonable and necessary repairs to protect the property; and

        (2) Keep an accurate record of repair expenses.

    e.  Cooperate with **us** in the investigation of a claim.

    f.  Prepare an inventory of damaged personal property showing the quantity, description, **Actual Cash Value** and the amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory.

    g.  As often as **we** reasonably require:

        (1) Show **us** the damaged property;

        (2) Provide **us** with records and documents **we** request and permit **us** to make copies; and

        (3) Submit to examination under oath, while not in the presence of another **insured**, and sign the same. A parent or guardian may be present with a minor during any interview or examination.

    h.  Send to **us**, within ninety-one (91) days after **our** request, **your** signed, sworn proof of loss on a standard form supplied by **us. We** must request a signed, sworn proof of loss within fifteen (15) days after **we** receive **your** written notice, or **we** waive **our** right to require a proof of loss. Such waiver will not waive **our** other rights under this policy.

    \*\*\*

21. Paragraph 5.c. **Loss Payment** under Section **I** – Property Conditions is replaced by the following:

    c. **We** will adjust all losses with **you. We** will pay **you** unless some other person is named in the policy or is legally entitled to payment.

    \*\*\*

22. Paragraph 5.f. of **Loss Payment** under Section **I** – Property Conditions is replaced by the following:

    f. Any payment **we** make for a covered loss for covered property will be reduced by the amount paid by any insurer, including **us** or an affiliated company of **ours,** for a previous loss to the same covered property if **you** failed to properly repair or replace the covered damaged property. **We** will take the appropriate reduction from any payment due to any

subsequent loss for damage to the same covered property, unless **you** furnish **us** with proof that the prior damage had been fully repaired or replaced. . . .

23. Paragraph 8. **Suit Against Us** under Section **I** – Property Conditions is replaced by the following:

      8. **Suit Against Us**

          a. Except as provided in Paragraph b. below, no suit or action can be brought against **us** unless there has been full compliance with all of the terms under Section **I** of this policy. Action must be brought against **us** within two (2) years and one (1) day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of **our** contractual duties as alleged in the action.

          b. With respect to suits brought in connection with claims for loss caused by windstorm or hail . . . .

24. For form P1405 Personal Home policy and form P1406 Personal Condo policy, Paragraph 10. **Mortgage Clause** under Section **I** – Property Conditions is replaced by the following:

      10. **Mortgage Clause**

          a. **We** will pay for any covered loss or damage to buildings or structures to the mortgagee shown in the Declarations as interested appear.

***

**CRESTBROOK PROTECTION – PERSONAL HOME POLICY**

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement. For an additional premium the following coverages apply:

\*\*\*

      2. The following is added under the Definitions section in respect to this endorsement: **"Seepage or leakage"** means direct physical damage caused by escaping water, steam, moisture or vapor, or the presence or condensation of humidity, moisture or vapor. For the purposes of this endorsement, a household appliance includes, but is not limited to, a freezer, refrigerator, dishwasher, garbage disposal or clothes washing machine.

      \*\*\*

      7. The following sentence is removed from paragraph 14. **Ordinance or Law** under Section **I** – Additional Property Coverages

      The most **we** will pay for this coverage is one hundred percent (100%) of the Coverage A – Dwelling limit of liability shown on the Declarations.

      \*\*\*

      12. Paragraph 2.d. of **Deductible** under Section **I** – Property Conditions is replaced by the following:

          d. For a covered loss that is equal to or exceeds $50,000, **we** will waive the Section **I** Deductible shown in the Declarations.

          This waiver of deductible does not apply to:

          (1) Covered property with an applicable Section **I** deductible greater than $25,000;

          \*\*\*

          (3) A vacancy deductible;

          (4) A construction deductible;

          (5) Any other special or specifically listed deductible shown in the Declarations or contained within the policy provisions; or

20

(6) Covered losses arising from **Seepage or leakage** caused by a leak, break, overflow or discharge from a plumbing, heating or air conditioning system, or a household appliance.

33.     The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

## Second Defense
## No Breach of Policy

34.     Plaintiffs' claim has been properly investigated, adjusted, and evaluated. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including but not limited to violation(s) of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

## Third Defense
## Failure of Conditions Precedent

35.     Plaintiffs have failed to comply with one or more provisions of the Policy and, therefore, are precluded from bringing suit to enforce the Policy. The Policy expressly states:

[N]o suit or action can be brought against **us** unless there has been full compliance with all of the terms under Section **I** of this policy. Action must be brought against **us** within two (2) years and one (1) day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of **our** contractual duties as alleged in the action.

36.     Plaintiffs in this instance have failed to fulfill their duties after a loss as required by the Policy, including but not limited to the following duties:

a.  Give prompt notice to **us** or **our** agent. . . .
\*\*\*
d.  Protect the property from further damage. If repairs to the property are required, **you** must:
(1) Make reasonable and necessary repairs to protect the property; and
(2) Keep an accurate record of repair expenses.
e.  Cooperate with **us** in the investigation of a claim.

\*\*\*
    g. As often as **we** reasonably require:
        (1) Show **us** the damaged property;
        (2) Provide **us** with records and documents **we** request and permit **us** to make
        copies;
\*\*\*

37.    Accordingly, because Plaintiffs have not met all conditions precedent to filing this lawsuit, Plaintiffs are contractually precluded from bringing suit against Crestbrook.

## Fourth Defense
## Failure to Mitigate/Contribution

38.    Plaintiffs are barred from any recovery from Crestbrook, in whole or in part, due to Plaintiffs' own fault, acts and/or omissions, negligence, breach of duty, failure to mitigate the alleged damages, contribution to their own alleged damages, and/or breach of contract or that of their agents, representatives, or employees. This includes, but is not limited to, Plaintiffs' failure to properly maintain and repair the Property's shower pans and tile flooring.

## Fifth Defense
## Lack of Coverage Precludes Extra-Contractual Liability

39.    The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and claims for violations of the Texas Deceptive Trade Practices Act predicted on the alleged breach of an insurance contract. Because Plaintiffs' allegations are generally based upon Crestbrook's alleged failure to timely pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes Plaintiffs' extra-contractual claims against Crestbrook as a matter of law.

## Sixth Defense
## Loss Settlement Provisions

40.    Crestbrook relies on the loss settlement provisions set forth in the relevant insurance policy limiting loss payments as set forth in the Policy.

**Seventh Defense**
**Limits of Liability**

41.     Any recovery by Plaintiffs is subject to the applicable limits set forth in the relevant insurance policy. Additionally, Plaintiffs may not recover more than their financial interest in the Property as provided in the relevant policy's Section I Property Conditions.

**Eighth Defense**
**Deductible**

42.     To the extent any damage to the covered property is determined by the factfinder to be the result of a covered peril as alleged in Plaintiffs' First Amended Complaint, which is denied, Plaintiffs' recovery is subject to the Policy's $5,000 All Peril deductible as shown in the Declarations of the Policy.

**Ninth Defense**
**Due Process and Equal Protection**

43.     To the extent Plaintiffs seek punitive damages, Crestbrook invokes its right under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Crestbrook affirmatively pleads that Plaintiffs' pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

44.     To the extent Plaintiffs seek punitive damages, Crestbrook asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Tenth Defense**
**Statutory Limitations for Punitive Damages**

45.     With regard to Plaintiffs' claims for exemplary/punitive damages, Chapter 41 of

the Texas Civil Practice & Remedies Code limits any award of such damages to the greater of:

(1)(A)  two times the amount of economic damages; plus

(1)(B)  an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or

(2)      $200,000.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)–(2).

46.     Crestbrook further asserts entitlement to and application of the mandates and limits set forth in Texas Civil Practice & Remedies Code §§ 41.001–014 with regard to any award of exemplary/punitive damages in this case.

### Eleventh Defense
### Non-Segregation of Damages

47.     To the extent any damage to the insured property is determined by the factfinder to be the result of a covered peril as alleged in Plaintiffs' First Amended Complaint, which is denied, Crestbrook asserts that Plaintiffs have failed to segregate damages resulting from covered causes of loss from damages resulting from causes of loss excluded under the Policy.

### Twelfth Defense
### *Bona Fide* Dispute

48.     A bona fide controversy existed and continues to exist concerning Plaintiffs' entitlement to insurance benefits from Crestbrook. Under Texas law, Plaintiffs carry the burden to establish that Crestbrook unreasonably denied or delayed payment of an insurance claim when liability became reasonably clear. At all times material to this lawsuit, Crestbrook had a reasonable basis for its conduct based upon the claim investigation. Moreover, Crestbrook would show that a *bona fide* controversy existed and that liability under the Policy, if any, was not reasonably clear and remains so to date. In other words, nothing more than a *bona fide* coverage dispute exists

between the parties, which does not permit Plaintiffs to recover extracontractual damages in this case.

## Thirteenth Defense
## Excessive Demand

49.     Crestbrook asserts that Plaintiffs are not entitled to attorney's fees because Plaintiffs have asserted an excessive demand. Plaintiffs have acted unreasonably and in bad faith by demanding monies to which they are not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive.

## Fourteenth Defense
## Tolling of Statutory Penalties

50.     Plaintiffs' own delays, actions, and omissions in presenting the claim at issue in this lawsuit should not inure to Plaintiffs' financial benefit. While Crestbrook denies liability under Chapter 542 of the Texas Insurance Code, if upon final hearing and trial, the fact finder determines that there has been one or more violations of this statute, then Crestrbook urges the Court to determine that all penalties during any delays attributable to Plaintiffs should be tolled. Additionally, under equitable principles, Plaintiffs have waived, forfeited, or are estopped from asserting and has otherwise relinquished entitlement to the penalty provided for under Chapter 542 of the Texas Insurance Code, as well as any other delay-based or time-based penalty of interest because of Plaintiffs' own discretionary delays and inaction in pursuing relief in accordance with the terms of the Policy.

## Fifteenth Defense
## Proportionate Responsibility

51.     Crestbrook has denied and continues to deny the allegations raised by Plaintiffs in this lawsuit. However, to the extent that Crestbrook is found liable to Plaintiffs for damages,

Crestbrook asserts that Plaintiffs are proportionately responsible for such damages, and that Plaintiffs are barred from recovering such damages pursuant to Texas Civil Practice & Remedies Code §§ 33.001–.002.

52.     Additionally, Crestbrook asserts that Plaintiffs' recovery, if any, must be limited or reduced pursuant to Texas Civil Practice & Remedies Code § 33.012. Crestbrook further asserts that the amount of its liability, if any, is limited by Texas Civil Practice & Remedies Code § 33.013.

### Sixteenth Defense
### Attorney's Fees Not Recoverable, Reasonable, or Necessary

53.     "In Texas, an attorney acting pro se cannot recover attorney's fees because those fees are not "'incurred.'" *In re Marriage of Pratz*, No. 12-20-00187-CV, 2021 WL 6061779, 2021 Tex. App. LEXIS 10076, at *21 (Tex. App.—Tyler Dec. 21, 2021, pet. denied) (citing *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 299-300 (Tex. 2011)). Plaintiff David J. Potter, II is appearing in this lawsuit *pro se*. Plaintiffs' claim for attorney's fees should therefore be denied.

54.     Plaintiffs' claim for attorney's fees should likewise be denied because any attorney's fees claimed by Plaintiffs are not reasonable or necessary. Plaintiffs' claim has been properly investigated, adjusted, and evaluated, yet Plaintiffs nonetheless opted to file a lawsuit, thereby litigating unreasonably and unnecessarily.

### III.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Crestbrook Insurance Company respectfully prays that Plaintiffs take nothing, that Crestbrook be awarded its reasonable and necessary attorneys' fees and costs, and for all such other and further relief to which Crestbrook may be justly entitled.

*[signature on following page]*

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Ave., Ste. 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT
CRESTBROOK INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served as indicated below on this the 12th day of December, 2023 to:

David J. Potter                                                                          *Via CM/ECF*
David J. Potter and Associates
901 N. Stateline Ave.
Texarkana, Texas 75501-5268
dpotter@potter-law.com

Shorty Barrett                                                                    *Via Certified Mail*
722 E 6th Street                                                      *9414 7266 9904 2178 2266 52*
Texarkana, Arkansas 71854

*/s/ Patrick M. Kemp*
Patrick M. Kemp